[Crim. No. 4303. Second Dist., Div. Three. Apr. 7, 1949.]

THE PEOPLE, Respondent, v. CHARLES ERNEST PORT, Appellant.

Charles Ernest Port, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant was charged in count I of an information with grand theft from the person, and in count II thereof with grand theft. Trial by jury was waived. He was adjudged guilty as charged in count I and not guilty as charged in count II. His motion for a new trial was denied. He appeals from the judgment.

The substance of appellant's contentions is that the evidence was insufficient to support the judgment, and that his alleged confession was not made voluntarily.

On December 8, 1947, Mrs. Whitelock went in a taxicab to a hotel for dinner. Upon leaving the hotel about 8 p. m., a taxicab driver who was standing by a taxicab in front of the hotel said, "Are you ready to go back?" and she replied, "Yes." He opened the cab door for her, and as she approached the cab two men came from a side street and entered the cab ahead of her. Then appellant, after saying something to them, told her that they were going in the direction she was going, and asked her if she would share the cab with them. She replied in the affirmative, and then entered the cab. After the cab had proceeded a few blocks, one of the men said that he belonged to the Merchant Marine, he had been gone about two years, and he would like to stop and buy a drink for everyone. Thereupon the driver asked her if she would mind if he stopped and let him get a drink. When she replied that she would not mind, the cab was soon stopped and she,

the two men, and the driver went into a bar. After answering their question as to the kind of drink she wanted, she went into the rest room. When she returned she drank the liquor that was there for her. She testified that after she drank it she did not know exactly what happened; that she thought she went back to the cab, but she did not have "any recollection after that"; the next thing she remembered was that she was in Elysian Park, flat on the ground in a ditch at the side of a dirt road, and a park attendant was shining a flashlight in her eyes and was shaking her.

Mrs. Whitelock also testified that when she went to dinner, and when she went into the bar, she was wearing a wedding ring with six diamonds on it of the value of $60; an engagement ring with a diamond on it of the value of $300; another ring with four diamonds on it of the value of $1,500; a "Girard Perego" watch with 12 diamonds on it of the value of $250; a seal jacket of the value of $500; and a hat and gloves. When she was awakened at the park she did not have the articles just mentioned, and also her purse was missing. She did not give anyone permission to take any of said property. She reported the theft to the police the night the theft occurred. Two days thereafter she identified the appellant at the police station as the person who drove the cab. She had two drinks of liquor at noon, and at dinner, on the day of the theft. She also testified that appellant was the taxicab driver referred to.

An employee of a café on Main Street testified as follows: He had known appellant as a customer of the café about six months prior to December 8, 1947. On said date, between 9 and 10 p. m., appellant came to the café, called him aside and showed him three rings and a watch and asked him if he wanted to buy them for $300. The watch was a French make with some diamonds on it. One ring had four stones on it, another ring had quite a few stones, and one was a wedding ring. The witness told appellant that he could not buy them but he would see if there was anyone in the café who would buy them. He (witness) then showed them to Officer Bingham who was in the café, then returned them to appellant, and told him that no one wanted them.

Officer Bingham testified that on December 8th, about 9:30 p. m., he was in said café and the café employee showed him a "Girard" watch, a wedding ring with five or six diamonds on it, an engagement ring with one or two stones, and a dinner ring with four fairly large stones; that the jewelry

was platinum or white gold; that he returned the jewelry to the employee; and that about 10:30 p. m. he (officer) received a report from Mrs. Whitelock.

An employee of a newspaper testified that on said December 8th, about 11:30 p. m., as he was walking on the west side of Figueroa Street between 5th and 6th Streets, he saw a woman's hat and gloves on the sidewalk in front of the Carlton Hotel. He took them to his home and later turned them over to the police. They were identified as property of Mrs. Whitelock.

Officer Burns testified that he and Officer Prewitt had a conversation with appellant on December 10th and that appellant's statements were free and voluntary; that no threat, force, or violence, was used against the defendant, and that no promise of immunity or hope of reward was extended to him. Appellant objected to the conversation, upon the ground that no foundation was laid for it. Thereupon, and prior to receiving the testimony as to the conversation, the appellant was permitted to ask questions on *voir dire* examination and to testify regarding the circumstances under which the statements were made. He was also permitted to call witnesses to testify regarding his physical appearance soon after the conversation. He testified that Officer Burns struck him in the stomach several times and kneed him in the testicles, causing his testicles to swell; that Officer Prewitt struck him in the stomach twice; that the officers said they were going to get a confession out of him or half kill him; that after they had stopped beating him and when he was about "ready to pass out" he told them that he would cooperate with them; and that he then said everything they wanted him to say. Two men, who were confined in the county jail, were called as witnesses by appellant. They testified that they saw the appellant in the jail soon after he entered it, and that they observed bruises on his stomach and that his testicles were swollen. At the request of the court, two officers referred to by appellant as persons to whom he had complained about the beatings, were called as witnesses. One of them said that no such complaint was made to him. The other officer, who worked in the bathroom of the jail, said that appellant told him that the officers who arrested him had beaten him. He also testified that he did not recall seeing bruises on appellant's stomach or seeing that his testicles were swollen. The chief nurse at the jail, called as a witness at the request of the judge,

testified that the medical records of the jail did not show any such physical disturbances. Officers Burns and Prewitt denied that they or either of them struck or beat or threatened appellant. The court overruled appellant's objection to the testimony regarding the conversation had by Officers Burns and Prewitt with appellant on December 10th. Officer Burns then testified as follows: Appellant stated that he had picked up the two men on Main Street and had driven them "out on the west side." Their names were Jess and Jimmie but he did not know their last names. He had picked up this woman (Mrs. Whitelock) at the Town House (the place where she went to dinner). They drove around the block and stopped at a small bar where they had some drinks, and then the two men and the woman got back into the rear seat of the cab and he drove the cab into Elysian Park. The two men in the back seat took the woman's jewelry, pocketbook and furs, put her out of the cab, and left her lying on a bank near the road. She was screaming when they drove away. They went to Main Street and stopped near a café. He (appellant) took the jewelry into the café and asked a fellow in there if he could sell it for him. Appellant was unable to sell it, and he returned to the cab and gave the jewelry back to his companions. He let the two men "out down the street from there," and then went to the Carlton Hotel to get his wife and another man and the other man's wife. When he "drove up to the Carlton Hotel he cleaned his cab out," and the hat and glove were left on the curb where he had "swept out" the cab. He then took his wife and the two other persons to a café on 7th Street where they had dinner. He returned his cab to the company about 11:30 p. m.

Officer Prewitt testified in substance, concerning the conversation, the same as Officer Burns had testified.

Appellant denied that he took Mrs. Whitelock to or from the Town House (where she had dinner). He testified that he took his cab from the company garage at 6:10 p. m. on December 10th and at that time one Al Williams, who lived at the Carlton Hotel, was with him; that he took Williams to the Union Station and then took him to the Carlton Hotel; then he hid his cab in a parking lot so the cab superintendent would not see it; then he and his wife, and Mr. and Mrs. Williams, walked to the Gates Hotel, where he lived, and they had some drinks there; then he made a few trips down town with his cab and was gone about one and one-half hours; then he and his wife, and Mr. and Mrs. Williams, went to

a café on 7th Street for dinner and they stayed there until about 11 p. m. He checked his cab in at 11:30 p. m. He denied that he took any jewelry into the café on Main Street; denied that he took any property from Mrs. Whitelock; denied that he had two men by the names of Jess and Jimmie, or any other names, at the Town House on said day. He testified that he answered the officers questions "according to their story" and according to "what they was telling to answer to."

Appellant's wife testified that she and Mr. and Mrs. Williams arrived in Los Angeles from Stockton on the morning of December 8th; that the first time they saw appellant that day was about 3 p. m. at the Gates Hotel; that appellant and Mr. Williams left the hotel about 5:30 p. m. and were gone about ½ hour; that appellant then left again to make a few trips in the cab; that he returned in the early evening, and then the four of them went to dinner together and were together the remainder of the evening.

 The question as to whether the confession of appellant was freely and voluntarily made was one of fact for determination of the trial judge. If the finding of a trial judge that a confession was freely and voluntarily made is supported by substantial evidence, the finding will not be disturbed on appeal. (*People* v. *Cucco,* 85 Cal.App.2d 448, 452 [193 P.2d 86].) The record shows that the trial judge, before receiving the alleged statements of appellant in evidence, required an extensive investigation regarding the charges made by appellant that his statements to the officers were not free and voluntary. A statement in the case of *People* v. *Mehaffey,* 32 Cal.2d 535, at page 553 [197 P.2d 12], is appropriate here: ". . . it is manifest that the matter [referring to alleged confessions] was fully developed in the trial court, with defendant having every opportunity to present his position, and that the question whether the . . . confessions were freely and voluntarily made became one of fact for the trial court to determine in the first instance from considerations of evidence which sharply differed. . . ." It was not error to receive the evidence as to the conversation.

 Irrespective of the statements allegedly made by appellant to the investigating officers, the evidence was sufficient to support the judgment. The victim of the theft identified the appellant as the driver of the taxicab. There was testimony by the employee of the Main Street café to the effect

that appellant, soon after the theft, was in the café exhibiting, and attempting to sell, jewelry of the same description as the stolen jewelry. The testimony of Officer Bingham, as to the description of the jewelry which was shown to him in that café on the night of December 10th, was corroborative of the testimony of the café employee. The contentions of appellant are not sustained.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.